# DISCIPLINARY BOARD OF THE HAWAII SUPREME COURT, Petitioner, *v.* FRANK K. H. KIM, Respondent Attorney

NO. 6834

August 16, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

On June 29, 1978 this court issued an order disbarring respondent, Frank K. H. Kim. The Order of Disbarment stipulated that a written opinion would be forthcoming. This opinion is in accordance with that order.

The pertinent facts of the instant case are undisputed. Respondent has been a duly licensed attorney in the State of Hawaii since 1969. During the period from early 1972 to 1975, respondent was retained by the administrator of the estate of Sadao Nakanishi, deceased. Sadao Nakanishi died in an airplane crash in February 1972. Respondent was employed to handle the wrongful death action against the airline company and to probate the estate of the deceased. The wrongful death action was subsequently settled in favor of the estate for $55,000. The $55,000 settlement draft was endorsed in blank by the administrator of the estate and by the three surviving children of the deceased. On November 19, 1973, respondent deposited the $55,000 draft into his client's trust account. Respondent then withdrew $8,250 from the $55,000 as his authorized court approved legal fees from the estate for obtaining the settlement. The balance of the settlement proceeds, $46,750, belonged to respondent's client, the estate of Sadao Nakanishi, and remained in the client's trust account. Respondent did not have any of his personal funds in the client's trust account. However, respondent subsequently misappropriated all but $669.84 of the estate's original $46,750 into respondent's own hands and personal checking account without the consent of his client.

Respondent also failed to complete the probate of the estate and ceased providing legal services in the matter without the consent of his client or good cause and despite repeated demands by his client to finish the probate. Respondent also failed to prepare the federal estate tax returns and the State of Hawaii inheritance tax returns and to make payments when initially due. Consequently, the estate was assessed for the taxes, penalties and interest in both tax situations.

On August 20, 1976, respondent was duly served with an order to appear on or before September 1, 1976, before Judge Hiroshi Kato to render and deliver to the court a full accounting of the estate and trust matters. Respondent failed to appear as required without good cause.

On November 4, 1976, pursuant to Rule 16 of the Rules of the Supreme Court of the State of Hawaii, the Office of Disciplinary Counsel instituted formal disciplinary proceedings against respondent. After a hearing, the Disciplinary Board of the Hawaii Supreme Court submitted a report to this court containing twelve allegations of misconduct by respondent resulting from the above facts.[1] The report recommended, *inter alia,* that respondent be disbarred and prohibited from the practice of law before the courts of this state. On June 28, 1978, a hearing was held before this court.[2] At that hearing, respondent admitted that he violated the Code of Professional Responsibility but argued that the recommended sanction of disbarment would be unduly harsh in light of certain mitigating circumstances. We disagree with respondent and hold that, in the instant case, disbarment pursuant to the order of June 29, 1978 was appropriate.

Although the Disciplinary Board has submitted a detailed report of the misconduct of respondent and recommended sanctions in light of respondent's misconduct, the report and recommendations are not binding on the Hawaii Supreme Court and are only entitled to serious consideration. This court is the ultimate trier of fact as well as the law in every case of a charge of unprofessional conduct of an attorney brought before it. Consequently, this court will weigh and review the evidence presented to determine if the evidence is sufficient to sustain the findings of the Disciplinary Board.

---

[1] The report of the Disciplinary Board contained the following alleged violations of the Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(3), (4), (5), (6); DR 6-101(A)(3); DR 7-101(A)(2), (3); DR 7-102(A)(3); DR 9-102(A); DR 9-102(B)(3), (4).

[2] The jurisdiction of this court is based on Rules 16.1 and 16.7(c) of the Rules of the Supreme Court of the State of Hawaii.

*Accord, In re Moore,* 110 Ariz. 312, 518 P.2d 562 (1974); *Black v. State Bar of California,* 57 Cal.2d 219, 18 Cal. Rptr. 518, 368 P.2d 118 (1962). The misconduct must be shown by clear and convincing evidence before disciplinary action will be taken and any reasonable doubt will be resolved in favor of the accused. *In re French,* 28 Haw. 47, 65 (1924). *Accord, Black v. State Bar of California, supra; In re Melnick,* 383 Ill. 200, 48 N.E.2d 935 (1943).

In the instant case, the facts are clear and respondent has admitted, *inter alia,* that he misappropriated approximately $46,000 of the funds of his client without the client's knowledge or consent.[3]

The wrongful misappropriation of the funds of a client without the client's knowledge or consent by an attorney is in clear violation of the Code of Professional Responsibility. At the very least, such misconduct contravenes DR 9-102 regarding the preservation of the identity of funds of the client.[4]

---

[3] Since we find that respondent's misappropriation of the funds of his client is sufficient to warrant disbarment, we need not discuss the remaining allegations of misconduct.

[4] DR 9-102 outlines the minimum procedures necessary for an attorney when dealing with the funds of his or her clients.

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm in the State of Hawaii, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State of Hawaii and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly

The funds of a client or others held by an attorney must be kept inviolate and only the strictest rules of conduct will be applicable. *In re Banner,* 31 N.J. 24, 27, 155 A.2d 81, 82 (1959), *quoting In re Gavel,* 22 N.J. 248, 264, 125 A.2d 696, 704 (1956). The attorney-client relationship involves the highest degree of trust and confidence. The duty of an attorney to the client must be discharged honorably and faithfully, governed by the most exacting principles of morality and justice. *See State v. Barrett,* 207 Kan. 178, 183, 483 P.2d 1106, 1110 (1971), *quoting Stockton v. Ford,* 52 U.S. 232, 247 (1850). Thus, in numerous cases, both in this jurisdiction and in others, the misappropriation of the funds of a client by an attorney has resulted in the immediate disbarment of the culpable attorney. *See e.g., In the Matter of Desha,* Hawaii Supreme Court File No. 4803 (1968); *In the Matter of Achi,* 10 Haw. 7 (1895); *In the Matter of Mahoe,* 3 Haw. 255 (1871); *In re Moore, supra; In re Campbell,* 108 Ariz. 200, 495 P.2d 131 (1972); *State v. Barrett, supra; In re Melnick, supra.*

Respondent argues that although the misappropriation of the funds of a client by an attorney may warrant disbarment, in the instant case there are at least three mitigating circumstances that should lessen the recommended sanctions of the Disciplinary Board. First, respondent has submitted the testimony of other clients and attorneys who attested to respondent's fitness to practice law. Not one client has asked respondent to withdraw as counsel for lack of confidence in his honesty, integrity or competence. Also, several clients have offered to aid respondent in restoring the misappropriated funds to the Nakanishi estate. Second, respondent contends that at the time of the misappropriation he had various health and physical impairments which may have

---

upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

contributed to his inattentiveness to his work and the subject misconduct. Third, respondent submits that the sanctions should be mitigated since respondent has recently made complete and full restitution to the injured parties.

We find no merit in respondent's arguments to mitigate the recommended sanction of disbarment. Although the testimony of respondent's other clients and other attorneys was favorable, it neither excused the fact that respondent misappropriated the funds of his client nor served to guarantee that respondent will not engage in such misconduct in the future. In *In re Campbell, supra,* an attorney was similarly culpable of misappropriating the funds of his client. In mitigation, the attorney offered the favorable testimony of the victims of the misappropriation and members of the bench and bar. Notwithstanding the testimony, the court ordered the attorney to be disbarred.

Respondent's alleged health and physical impairments also will not serve to mitigate the recommended sanction of disbarment. Respondent has only presented generalized statements of ill health occurring at the time of the misappropriation.[5] His allegations of poor health were insufficient to either excuse his misconduct or mitigate the consequences.

Similarly, the fact that respondent has recently made full restitution to the injured client will not justify a lesser penalty. Depending on the facts of each particular case, restitution may or may not be a mitigating factor. But in the instant case, where restitution was made only after a complaint was filed it will not serve to lessen the penalty. *Accord, In the Matter of Achi, supra; In re Campbell, supra; In re Melnick, supra.*

Respondent also argues that while he did misappropriate his client's funds, the misappropriation was inadvertent and due primarily to sloppy office management rather than any

---

[5] The record is unclear as to exactly what respondent's health and physical impairments were. It seems that respondent apparently had some dental problems and loss of blood.

dishonest or fraudulent scheme. Respondent's contentions are meritless. Respondent only had two relevant checking accounts: his personal account and his client's trust account. The checks of each account were properly labelled and easily distinguishable. Also, prior to the misappropriation, the funds of each account were separate. We are not convinced that respondent could not have known that he was using the funds of his client's trust account for his personal purposes when the checks of that account were clearly labelled "Client's Account." We are satisfied that respondent's misconduct in misappropriating the funds of his client clearly evidenced the requisite dishonesty and moral turpitude to warrant disbarment.

> "[T]he legal profession affords unscrupulous attorneys exceptional opportunities to impose and prey upon those who entrust them with business, and it is essential that members of the profession, in their relation to the public and with clients, shall be strictly honest and worthy of trust and confidence." A certificate of admission to the bar is a representation made by this court that the possessor is worthy of the confidence of clients entrusting their interests to his care. The purpose of disbarment is not punishment of the attorney, but is for the protection of the public and to maintain the integrity of the profession and the dignity of the courts, of which the attorney is an officer.

*In re Melnick*, 383 Ill. at 206, 48 N.E.2d at 938, *quoting Chicago Bar Ass'n v. Meyerovitz*, 278 Ill. 356, 367, 116 N.E. 189, 193 (1917).

> Every such case deserves the highest censure, and renders it impossible to allow the person guilty of such offenses to retain the honorable position of a practitioner at law. The least that the Court can do in such a case is to relieve the community from the liability of being imposed on by a practitioner of this character, and to sustain the good name of the Bar by removing from it any member who is willing to bring such disgrace upon its reputation.

*In the Matter of Mahoe*, 3 Haw. at 257 (1871).

456

The report and recommendation of disbarment by the Disciplinary Board of the Hawaii Supreme Court are approved as to respondent Frank K. H. Kim. Respondent was appropriately disbarred and prohibited from the practice of law before the courts of this state by the Order of Disbarment of June 29, 1978.

*Jung Y. Lowe,* Chief Disciplinary Counsel, and *Sheila L. Yee,* Assistant Disciplinary Counsel, for Petitioner.

*Robert A. Franklin* for Respondent Attorney.