OFFICE OF DISCIPLINARY COUNSEL, Petitioner, *v.* JOHN HENRY CASHMAN, JR., Respondent

NO. 7887

JUNE 3, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

*Per Curiam.* On May 27, 1981, this Court issued an Order immediately disbarring John Henry Cashman, Jr. (Respondent), from the practice of law. That Order stated that an opinion would thereafter be filed. This opinion is in accordance with that Order.

The instant matter comes before this Court upon disciplinary proceedings instituted pursuant to Rule 16.13 (Attorneys Convicted of Crimes), Rules of the Supreme Court. On December 21, 1979, Respondent was convicted by guilty plea in the Superior Court of the State of California on two counts of the felony offense of grand theft. On June 26, 1980, this Court ordered, upon motion of Petitioner, that Respondent be immediately restrained from the practice of law in Hawaii based upon his California felony conviction. Respondent's case was then, in accordance with Rule 16.13(c) of this Court, referred back to the Disciplinary Board of the Hawaii Supreme Court (hereinafter Disciplinary Board) for further proceedings.

On November 25, 1980, a hearing was held before a three-member hearing committee of the Disciplinary Board for the sole purpose of determining the extent of discipline to be imposed. Rule 16.13(c), Rules of the Supreme Court. Respondent was present and

testified on his own behalf at that hearing. The hearing committee thereafter submitted a report to the Disciplinary Board setting forth its findings of fact, conclusions of law, and recommendation. The most pertinent portions of the hearing committee's report are as follows:

## FINDINGS OF FACT

. . . . .

3. Sometime in the fall of 1979, Respondent resigned his membership in the Bar of the State of California while disciplinary charges were pending against him in that jurisdiction. . . . Prior to his resignation, Respondent practiced law mainly in California, but also handled at least two cases in Hawaii.

4. On or about December 21, 1979, Respondent was convicted by guilty plea in the Superior Court of the State of California, City and County of San Francisco, of two counts of the felony offense of grand theft, as defined by California Penal Code § 487.1. Respondent was thereupon placed on probation, and he was also ordered to perform 300 hours of community service and to make restitution to the victims of his criminal conduct.

. . . . .

7. Respondent's grand theft felony conviction was based upon his misappropriation of two clients' funds totalling $15,735.00. With respect to the first client, Margaret F. Atkinson (Atkinson), who Respondent represented in a certain civil action, Respondent wilfully and knowingly misappropriated the sum of $7,093.60. That sum constituted a portion of a settlement recovery which Respondent received on behalf of Atkinson. However, Respondent retained those funds for his own use or for the use of third parties without the authorization or knowledge of his client and despite his client's repeated demands for those funds. With respect to the second client, Janet Brugos Young (Young), Respondent wilfully and knowingly misappropriated the sum of $8,641.40, which belonged to the estate of Young's deceased former husband. . . .

8. On or about July 2, 1980, Respondent was convicted by guilty plea in the Municipal Court of the State of California,

Santa Clara County Judicial District, of one count of the misdemeanor offense of practicing law without a license, as defined by California Business and Professions Code § 6125. Respondent was thereupon sentenced to six months of summary probation plus a fine of $130.

.   .   .   .   .

10. Respondent's misdemeanor conviction for practicing law without a license was based upon his filing on December 12, 1979, a pleading entitled "Cross-Complaint" in a civil case in the Superior Court of the State of California, County of Santa Clara. Respondent filed the pleading, which plainly bore his signature as "Attorney for Cross-Complainant", subsequent to his resignation as a member of the California Bar. . . .

Based upon the foregoing Findings, the Hearing Committee makes the following:

## CONCLUSIONS OF LAW

Respondent has violated DR 1-102(A)(3) (prohibiting illegal conduct involving moral turpitude), DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice), DR 1-102(A)(6) (prohibiting conduct that adversely reflects on his fitness to practice law), and DR 9-102(B) (prohibiting the failure to safeguard the property of clients). In addition, Respondent's conduct was in violation of his attorney's oath.

In light of these Findings and Conclusions, the Hearing Committee makes the following:

## RECOMMENDATION

The Hearing Committee recommends that Respondent be disbarred from the practice of law.

The Committee is also aware that Respondent has previously been suspended from the practice of law by the Supreme Court of Hawaii for commingling the funds of a client with his own funds. . . . However, the Committee specifically finds that irres-

pective of the Respondent's prior discipline, the above-stated Findings of Fact and conclusions of Law mandate the disbarment of Respondent.

The Disciplinary Board considered the hearing committee's report on February 20, 1981. Petitioner had duly notified Respondent of that Disciplinary Board meeting, but Respondent filed no material with the Disciplinary Board in opposition to the hearing committee's report and he failed to appear before the Disciplinary Board. The Disciplinary Board voted unanimously to adopt the hearing committee's findings, conclusions, and recommendation for the disbarment of Respondent from the practice of law.

On February 23, 1981, Petitioner filed with this Court the Disciplinary Board's Report and Recommendation for the Disbarment of Respondent from the practice of law. On the same day, Petitioner mailed a copy of that Report and Recommendation to Respondent. Respondent had sixty days from the date of filing with this Court of the Disciplinary Board's Report and Recommendation within which to file an Opening Brief. *See* Rule 16.7(c) Rules of the Supreme Court. Although Petitioner wrote to Respondent on February 24, 1981, and again on March 12, 1981, advising Respondent of the 60-day period within which an Opening Brief must be filed, Respondent failed to file any such Opening Brief.

Petitioner therefore submitted the instant motion for the disbarment of Respondent from the practice of law. Based upon the factual findings and conclusions of law set forth in the Disciplinary Board's Report and Recommendation, which remain unchallenged by Respondent, it is our determination that Respondent must be disbarred.

As heretofore discribed, the instant matter involves both Respondent's December, 1979, grand theft conviction, as well as his subsequent conviction in July 1980, of the misdemeanor offense of practicing law without a license. Both convictions took place in the State of California and resulted from Respondent's entering pleas of guilty. As found by the hearing committee and the Disciplinary Board, those convictions by guilty plea were "final" for purposes of Rule 16.13 and, as such, constituted conclusive evidence of Respondent's commission of the criminal offenses. Rule 16.13(b), Rules of

the Supreme Court.

In explaining his conduct with regard to the misappropriation of his client's funds, Respondent's statements before the Disciplinary Board's hearing committee contained nothing in the way of mitigation or extenuation of the charges filed against him. In testifying before the hearing committee, Respondent alluded to financial strains associated with his law practice and with his having expanded that law practice too soon, thus building up "too large of an overhead." However, other than so mentioning the financial difficulties which caused him to use his clients' monies for his own benefit, Respondent presented no evidence of mitigation. He plainly stated that he had no drinking or gambling problems and that his marriage — although strained — has remained intact. He indicated that he simply used his clients' funds to pay his own creditors. In light of these circumstances, there is only one result which can be reached — disbarment. *Office of Disciplinary Counsel v. Smith, 62 Haw. 467, 617 P.2d 80 (1980); Disciplinary Board v. Kim, 59 Haw. 449, 583 P.2d 333 (1978).*

Respondent's conduct in misappropriating the funds of his clients violates the most basic rule of professional responsibility and requires the severest disciplinary sanction. *Office of Disciplinary Counsel v. Smith, supra.* This Court has in several recent cases upheld and reinforced the strict standard to which attorneys must be held in handling clients' monies. *Office of Disciplinary Counsel v. Smith, supra; Office of Disciplinary Counsel v. Johnson,* 62 Haw. 95, 611 P.2d 993 (1980); *Office of Disciplinary Counsel v. DeMello,* 61 Haw. 223, 601 P.2d 1087 (1979); *Office of Disciplinary Counsel v. Hitchcock,* S. C. No. 7222 (Order filed April 25, 1979); *Disciplinary Board v. Kim, supra; Disciplinary Board v. Manning,* S. C. No. 6895 (Order filed April 28, 1978); *Office of Disciplinary Counsel v. Benson,* S. C. No. 5939 (Order filed August 29, 1975). As stated in *Disciplinary Board v. Kim, supra,* 59 Haw. at 453, 583 P.2d at 336:

The funds of a client or others held by an attorney must be kept inviolate and only the strictest rules of conduct will be applicable. The attorney-client relationship involves the highest degree of trust and confidence. The duty of an attorney to the client must be discharged honorably and faithfully, governed by the most exacting principles of morality and justice. Thus, in numerous cases, both in this jurisdiction and in others, the mis-

appropriation of the funds of a client by an attorney has resulted in the immediate disbarment of the culpable attorney.
(Citations omitted).

Other courts have imposed the most severe sanction upon attorneys convicted for theft of clients' funds. In *People v. Harthun,* 197 Colo. 1, 593 P.2d 324 (1979) (en banc), the respondent misappropriated $32,530.00 entrusted to him for distribution to the parties in a divorce action, and he was thereupon convicted by guilty plea of one count of theft. In disbarring the respondent, the court stated:

DR9-102(A) and DR9-102(B)(3) require as a minimum standard of conduct that a lawyer segregate his clients' funds from his own and keep them in identifiable bank trust accounts. He must also keep and maintain complete records of all such funds and be prepared to account to his client for the funds at all times. *Most importantly, he cannot employ those funds to meet his own personal expenses. Misuse of such funds strikes at the heart of public confidence in the legal profession and requires the most severe punishment.*

*Id.* at 4, 593 P.2d at 326 (citations omitted; emphasis added).

In *In re Wright,* 10 Cal.3d 374, 515 P.2d 292, 110 Cal.Rptr. 348 (1973) (en banc), the respondent was disbarred based upon his conduct in two cases. In the first case, the respondent had been convicted for grand theft involving $6,532.75 of funds belonging to his clients. A state prison sentence was suspended and the respondent was placed on probation for five years. In the second case, a civil judgment had been rendered against the respondent as a result of his mishandling of the funds of another client, with whom he had engaged in a business transaction. In ordering disbarment, the court noted in part that "[the respondent's] explanation that he was under financial pressure because of his business venture commitments and that he was having financial and domestic problems may explain his actions but they do not excuse his violation of his oath and his duties as an attorney at law." *Id.* at 382, 515 P.2d at 297, 110 Cal. Rptr. at 353. *See In re Abbott,* 19 Cal.3d 249, 561 P.2d 285, 137 Cal. Rptr. 195 (1977) (en banc) (attorney disbarred after pleading guilty to a charge of grand theft arising from his misappropriation of $29,500.00 belonging to his clients.) *See also In re Ellis,* 12 Cal.3d 442, 525 P.2d 699, 115 Cal.Rptr. 795 (1974) (en banc) (attorney suspended for five

years for conviction of grand theft involving funds of two collection agencies which he managed).

The facts in the instant case warrant a no less stringent view of Respondent's conduct. Respondent violated the trust placed in him by his clients by taking their funds and converting them to his own use and benefit. That conduct alone would be sufficient to merit disbarment.

However, Respondent exacerbated that misconduct in this case by engaging in yet another further illegal conduct. After voluntarily resigning from the State Bar of California, he knowingly and intentionally proceeded to act as if still licensed as an attorney by filing in the Superior Court of California a pleading bearing his signature as "Attorney for Cross-Complainant". That act resulted in Respondent's misdemeanor conviction for practicing law without a license, for which he was fined and placed on probation. Such a course of knowing, intentional, and flagrant disregard for the law further demonstrates that Respondent is deserving of the discipline recommended by the Disciplinary Board and its hearing committee.

Although Respondent's misconduct in the instant case occurred in California and not in Hawaii, that fact in no manner lessens the degree of responsibility which Respondent bears as a member of the bar of this State. Respondent is fully accountable, as a member of this bar, for his improper conduct in California. *In re Coleman,* 492 S.W.2d 750 (Mo. 1973) (en banc) (attorney who was member of both Oregon and Missouri bars disciplined in *Missouri* for misconduct which occurred in *Oregon* and which led to his resignation from the Oregon bar); *see Alaska Bar Association v. Benton,* 431 P.2d 146 (Alaska 1967) (attorney disbarred in Alaska for conviction upon guilty plea in State of Washington for grand larceny).

Finally, as set forth in the hearing committee's findings, Respondent was previously disciplined in Hawaii following his suspension in California for commingling a client's funds with his own funds. *Office of Disciplinary Counsel v. John Henry Cashman, Jr.,* S. C. No. 6422 (Order filed May 2, 1978). In that case, Respondent was ordered suspended here for thirty days. The hearing committee in the instant case specifically concluded — and the Disciplinary Board agreed — that irrespective of Respondent's prior discipline in Hawaii, the facts of the present matter are sufficient to mandate the disbarment of Respondent. We agree.

For the reasons stated herein, this Court has issued its Order disbarring Respondent from the practice of law in Hawaii.

*Daniel G. Heely,* Chief Disciplinary Counsel, and *Gerald H. Kibe,* Assistant Disciplinary Counsel, for petitioner on the motion.

