OFFICE OF DISCIPLINARY COUNSEL, Petitioner, *v.* DONALD S. KAGAWA, Respondent

NO. 7873

JANUARY 12, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

---

[1] We find the defendants' other specifications of error to be without merit.

OPINION OF THE COURT BY RICHARDSON, C.J.

The instant case was brought before this court through a motion for disbarment filed by the Office of Disciplinary Counsel (hereinafter the "petitioner") under Rule 16 of the Rules of the Supreme Court of the State of Hawaii. The respondent Donald S. Kagawa was a practicing attorney in Lihue, Kauai. Petitioner initiated these proceedings by filing several petitions with the Disciplinary Board of the Hawaii Supreme Court. These petitions listed fifteen complaints of unprofessional conduct on the part of the respondent. Although petitioner served these petitions upon respondent, the respondent did not file an answer to any of them.

Subsequently, the Disciplinary Board assigned the case to a Hearing Committee which conducted hearings during the period from December 3 to 6, 1979 in Lihue, Kauai and on December 13, 1979 in Honolulu, Hawaii. On April 13, 1980, the Hearing Committee submitted its report to the Disciplinary Board, recommending a four-year suspension of respondent. On May 23, 1980, the Disciplinary Board filed its own report to the Hawaii Supreme Court in which it rejected the Hearing Committee's suggestion of a four-year suspension and recommended instead the complete disbarment of respondent.

On August 22, 1980, this court held a hearing on petitioner's motion for disbarment during which time the respondent did not appear. Thereafter, on August 26, 1980, this court filed an order granting respondent 60 days from the date of that filing to explain why he should not be disbarred. Moreover, a copy of that order was served on the respondent on August 29, 1980. Since that date, respondent has failed to file any documents or to request a hearing.

Given the fact that respondent has been given more than enough time to appear before this court, we are now compelled to proceed to the merits of petitioner's motion without further delay. The issue which this court must now decide is whether a disbarment or suspen-

sion of respondent is appropriate under the Hawaii Code of Professional Responsibility.

## A. THE COMPLAINTS AGAINST RESPONDENT.

The material facts of this case are lengthy since fifteen complaints were filed against the respondent. However, we need describe only a few of these complaints in any detail because all of them depict a similar pattern of conduct by respondent.[1] As the complaints fully document, respondent's dealings with his clients ranged from procrastination to inexcusable neglect as evidenced by his consistent failure to respond to his clients' inquiries and to meet court deadlines. As a result, his lack of responsibility caused innumerable delays, dismissed lawsuits, and obvious prejudice to his clients.

For example, in complaint 4, Ruth A. Ching charged that respondent's mishandling of her case resulted in the dismissal of her lawsuit with prejudice and a lost opportunity for a remunerative settlement. She had contacted respondent for assistance in bringing a lawsuit against her deceased former husband's estate. Ching claimed that in their divorce proceedings, her husband had not fully disclosed his assets, thus depriving her of an adequate monetary award. Therefore, she sought $35,000, plus treble damages.

In April 1976, Ching paid respondent $600 as advanced costs and legal fees to provide this representation. Although he prepared and filed a complaint in the Fifth Circuit Court, respondent did very little work beyond that for his client. For example, on September 15, 1976, Clinton Shiraishi, Esq., the attorney for the executrix of the estate, wrote to respondent about the possibility of a settlement if the respondent could demonstrate the meritoriousness of his client's claim. Despite Shiraishi's overtures, respondent never inquired into

---

[1] The only exceptions are complaints 1, 2, and 3. Unlike the other complaints which accused respondent of negligence in the handling of his clients' cases, complaints 1, 2, and 3 involved a criminal contempt order against respondent in the Fifth Circuit Court of the State of Hawaii. Those complaints are not at issue in this case because petitioner concedes that they do not point to any violation of the Hawaii Code of Professional Responsibility.

the feasibility of a settlement. Respondent's failure to make this inquiry probably hurt his client's case. Shiraishi testified before the Hearing Committee that he probably would have advised the estate to settle for the $35,000 requested by Ching if respondent had taken the time to negotiate for his client.

In addition to respondent's failure to explore the advantages of a settlement, he did not conduct formal discovery in the litigation and failed to return many of Ching's phone calls. Moreover, respondent did not file a timely objection to Shiraishi's motion to dismiss under Rule 12(f) of the Hawaii Circuit Court Rules, resulting in the dismissal of Ching's lawsuit with prejudice. Finally, around April of 1978, Ching called the respondent seeking repayment of the $600 deposit she had paid him. Although respondent promised to send the money to her, he did not do so until November of 1978 when he received a letter from the petitioner. However, there is no indication in the record that respondent ever converted Ching's or his other clients' monies to his own use.

Complaint 11 further underscores respondent's irresponsible handling of many of his clients' cases. The complaint was filed by Dennis Akina who had hired respondent to bring a personal injury action on his behalf after he had been hit by a truck as a pedestrian. Respondent did file the lawsuit for Akina in the First Circuit Court on November 21, 1977, but failed to serve the summons and complaint upon the defendants. As a result, the court dismissed Akina's lawsuit for want of service on September 11, 1978.

On September 20, 1978, respondent filed a motion to reinstate Akina's complaint and attached his own affidavit in which he claimed that dismissal of the lawsuit was the result of an "innocent mis-calendaring." The court held a hearing on that motion on October 5, 1978 at which time it ordered that the hearing be continued to a later date. Several postponements of the hearing took place, but on February 20, 1979, respondent and defendants' attorney David Lo, Esq., agreed that the hearing would be held on March 27, 1979.

However, when the March 27th hearing date arrived, respondent told Lo that he would not be able to appear at the hearing because of a jury trial which he had to handle in Lihue, Kauai on the same day. Lo refused to agree to a postponement. Nonetheless, without prior notice, respondent informed the court that he was not going to be appearing at the hearing. Because respondent never got

Lo to agree to the postponement, Lo appeared in court anyway to oppose respondent's motion to reinstate Akina's complaint. Since respondent was not in court to argue for his motion, the court denied it, resulting in the dismissal of Akina's lawsuit with prejudice.

Following the denial of this motion, respondent had one more opportunity to salvage his client's lawsuit, but again neglected his responsibilities. Respondent filed a motion to reconsider in the First Circuit Court. The court held a hearing on his motion to reconsider on April 25, 1979. At that hearing, the court agreed to reinstate the lawsuit on the condition that respondent personally pay $125.00 for costs to Lo within 20 days of the filing of an order granting his motion. Such an order was filed on May 15, 1979, but respondent failed to make the payment as directed. As a result, the court again dismissed the lawsuit with prejudice at a hearing on July 18, 1979.

## B. VIOLATIONS OF THE DISCIPLINARY RULES.

In deciding whether disciplinary sanctions would be appropriate against an attorney, we emphasize that while the Disciplinary Board's report about the misconduct of respondent is entitled to serious consideration, the Hawaii Supreme Court is the ultimate trier of fact as well as the law. *Disciplinary Board v. Kim,* 59 Haw. 449, 451, 583 P.2d 333, 335 (1978). It is therefore the task of this court to determine whether the evidence in the record is sufficient to support the Disciplinary Board's findings, *supra* at 451, 583 P.2d at 335.

The evidence compiled by the Hearing Committee and adopted by the Disciplinary Board is undisputed since respondent failed to answer the petitions against him. Supreme Court Rule 16.7(b) states that where there is such a failure to answer

the charges shall be deemed admitted; provided, however, that a respondent who fails to answer within the time provided may obtain permission of the Chairman [of the Disciplinary Board] to file an answer if such failure to file an answer was attributable to mistake, inadvertence, surprise or excusable neglect.

Because respondent has yet to explain his failure to file an answer to the Disciplinary Board or to the Hawaii Supreme Court, the Hearing Committee's findings of fact must be considered admit-

ted by the respondent. *Office of Disciplinary Counsel v. DeMello,* 61 Haw. 223, 224, 601 P.2d 1087, 1088 (1979).

In light of the Hearing Committee's findings of fact, the Disciplinary Board concluded that respondent's conduct violated Disciplinary Rules 6-101(A)(3) (neglect of a legal matter), 7-101(A)(2) and (3) (failing to carry out a contract of employment thereby prejudicing the client's interests), and 9-102(B)(4) (failing to promptly return papers belonging to a client). We agree with the Disciplinary Board's conclusions of law. Disciplinary Rule 6-101(A)(3) provides that a lawyer shall not "[n]eglect a legal matter entrusted to him." This disciplinary rule is extremely important because one of the highest duties of an attorney is to act with reasonable punctuality and promptness in advancing his client's interests and protecting his rights. *In re Trask,* 53 Haw. 165, 172, 488 P.2d 1167, 1171 (1971). As we recognized previously:

> Procrastination and delay in handling of legal affairs not only induces a client to lose confidence in his attorney, but reflects badly on the profession and the courts, and may foster an impression in the public mind that the highly-vaunted standards of professional ethics are no more than a sham.

*Supra* at 172, 488 P.2d at 1171 (citing *In re Vandercook,* 474 P.2d 106, 108 (Wash. 1970) ).

In the instant case, respondent's handling of many of his clients' cases was one of neglect and procrastination. Since respondent failed to discharge his responsibilities to his client with reasonable diligence, his actions were in clear violation of Disciplinary Rule 6-101(A)(3).

Moreover, respondent violated Disciplinary Rules 7-101(A)(2) and (3). Rule 7-101(A)(2) provides that a lawyer shall not "[f]ail to carry out a contract of employment entered into with a client for professional services." In addition, Rule 7-101(A)(3) states that a lawyer shall not "[p]rejudice or damage his client during the course of the professional relationship."

The findings of fact of the Hearing Committee demonstrate that respondent contravened both of these rules. As complaints 4 and 11 show, respondent not only failed to complete litigation proceedings for his clients, but also severely prejudiced his client's cases. There is no evidence in the record which shows that respondent did any preparation or investigation in the *Ching* and *Akina* cases. Moreover,

his failure to file a timely objection to defense attorney's motion to dismiss in the *Ching* case resulted in the dismissal of his client's lawsuit with prejudice. Furthermore, in the *Akina* case, a similar dismissal occurred when the court dismissed Akina's lawsuit for want of service because of respondent's failure to serve the summons and complaint upon the defendants. Because respondent did not conduct his clients' lawsuits in a responsible manner, his actions were violative of Disciplinary Rules 7-101(A)(2) and (3).

Finally, respondent's inattentiveness to his clients' cases also put him in violation of Disciplinary Rule 9-102(B)(4), which states in relevant part:

(B) A lawyer shall:

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

As complaint 4 demonstrates, respondent violated Rule 9-102(B)(4) by failing to reimburse a client upon request. For example, respondent procrastinated in paying Ching back her $600 deposit until after petitioner prodded him into making the payment by writing him a letter.

This court has always considered highly reprehensible an attorney's refusal to reimburse his clients for failing to perform the requested services. *In re Trask, supra* at 169, 488 P.2d at 1169. In fact, an attorney's failure to repay a client is so serious that it might be a ground for disbarment. *Cf. Office of Disciplinary Counsel v. DeMello, supra.* Because respondent withheld the deposit money even after his client asked to be paid, a disciplinary sanction is appropriate under Rule 9-102(B)(4).

## C. THE APPROPRIATE DISCIPLINARY SANCTION.

Since respondent has not displayed the kind of diligence and conscientiousness normally expected of a practicing attorney, we agree with the Disciplinary Board that his conduct warrants disciplinary action under the Hawaii Code of Professional Responsibility. However, even though this court is in agreement with the Board that a disciplinary sanction would be appropriate, we consider the

Board's recommended sanction of a complete disbarment unduly harsh given the existence of mitigating circumstances in this case.

In *Disciplinary Board v. Bergan*, 60 Haw. 546, 592 P.2d 814 (1979), we recognized that the ultimate sanction of disbarment is inappropriate where mitigating factors are involved. In that case, respondent was convicted of knowingly and intentionally possessing cocaine with intent to distribute and was sentenced to three years of imprisonment. The Office of Disciplinary Counsel initiated formal disciplinary proceedings against respondent by filing a petition and certificate of conviction in this court. The petition stated that respondent had been convicted of a crime which constituted a felony in Hawaii, justifying immediate disciplinary sanction.

After reviewing respondent's case, the Hearing Committee recommended a three-year suspension of respondent. However, the Disciplinary Board rejected the Hearing Committee's suggestion of a three-year suspension, recommending instead the complete disbarment of respondent. This court overruled the Disciplinary Board and held that a five-year suspension would be an adequate sanction.

In rendering that decision, we considered several mitigating factors. For example, we observed that respondent had already served his time in a penal institution, making complete disbarment unnecessary. Moreover, we noted that respondent had voluntarily undergone psychiatric treatment and that his prognosis was favorable. In deciding that complete disbarment was too extreme a sanction, this court was basically engaging in a careful examination of the circumstances surrounding the attorney's actions. We believe that a case-by-case analysis of the facts in reviewing recommended disciplinary sanctions will produce equitable results for both the public and for the legal profession.

In the instant case, we conclude that there is enough evidence in the record to show that the respondent is entitled to more lenient treatment than complete disbarment.

As the petitioner pointed out in the hearing before this court on August 22, 1980, respondent was not guilty of serious, unethical conduct such as wilful misappropriation which would have warranted his disbarment. *Office of Disciplinary Counsel v. DeMello, supra.* In fact, respondent was going through a marital break-up during

the period in which he neglected his work,[2] and that when respondent began experiencing marital difficulties, he suddenly stopped working on many of his pending cases. It appears that respondent has remained so distraught that he no longer works as an attorney, but instead as a waiter at a hotel on Kauai. Furthermore, the strain of respondent's marriage probably exacerbated the problems in his office because his wife had also worked as his personal secretary.

Although this court has indicated that it will not hesitate to impose substantial sanctions upon attorneys who neglect their clients' cases, this court will continue to exercise caution and prudence in adopting the ultimate sanction of disbarment. In view of respondent's marital difficulties, which apparently contributed to his downfall as a promising attorney, as well as the other mitigating circumstances, we believe that the interests of the public and the profession would best be served by suspending respondent rather than disbarring him. Therefore, this court orders that respondent's license to engage in the practice of law be suspended for a period of four years, commencing from the filing of this opinion.

*Daniel G. Heely,* Chief Disciplinary Counsel, and *Gerald H. Kibe,* Assistant Disciplinary Counsel, for petitioner.

---

[2] At the hearing before this court, petitioner pointed out that no psychiatrists had examined respondent. Therefore, we are not absolutely certain that respondent was experiencing psychological stress which hampered his work. Moreover, respondent never testified about the extent to which he was affected by the pressures of his marital problems. Nonetheless, we believe that it is reasonable to surmise from the totality of the circumstances that respondent's marital difficulties probably hurt the quality of his work. To the extent that an attorney should be given the benefit of the doubt where the facts allow, *Disciplinary Board v. Kim, supra* at 452, 583 P.2d at 335, we conclude that respondent's marital problems are mitigating factors which should be taken into account.